IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

CASE NO. 5:20-CV-00143-TKW-MJF

J.W. MARINER CORPORATION,

    Plaintiff,

v.

ZURICH AMERICAN
INSURANCE COMPANY,

    Defendant.

_____/

## **AMENDED COMPLAINT**

Plaintiff, J.W. Mariner Corporation, through undersigned counsel, files this amended complaint. Plaintiff sues Defendant, Zurich American Insurance Company, and alleges:

### **Jurisdictional Basis and Venue**

1. Through this action, Plaintiff seeks declaratory relief requiring the Defendant to participate in the contractual appraisal process and for a court determination of the rights and duties of the parties regarding an examination under oath provision in an insurance contract between the parties.

2. The Court has diversity jurisdiction over this case and controversy pursuant to 28 U.S.C. § 1332.

3. Plaintiff is a Florida corporation with a principal address in Florida.

4. Defendant at all material times is and was a New York Corporation engaged in the insurance business with a statutory home office located in New York, New York and a principal place of business in Shaumburg, Illinois.

5. Venue is proper with this Court because (1) a substantial part of the events giving rise to the action occurred in Bay County, Florida and (2) the damaged property at issue is located in Bay County, Florida.

6. This is an action in which the amount in controversy exceeds seventy-five thousand dollars ($75,000.00), exclusive of pre-judgment interest, court costs and attorneys' fees.

**COUNT 1—CLAIM FOR DECLARATORY JUDGMENT (DEFENDANT SHOULD BE REQUIRED TO RESOLVE THE AMOUNT IN DIFFERENCE BETWEEN THE PARTIES FOR THE LOSS)**

7. Plaintiff re-incorporates the allegations contained in paragraphs 1-6 as if fully set forth herein.

8. In exchange for premium dollars, Defendant issued Plaintiff a policy of insurance for Plaintiff's property located at 615-637 N HWY 231 Panama City, Florida 32405. *Policy*, Exhibit A. The coverage period

for the policy commenced on September 19, 2018 and ended on September 19, 2019. Plaintiff paid all premiums on the insurance policy.

9. During the policy period, on or about October 10, 2018, Hurricane Michael damaged the Plaintiff's insured property. The loss was covered under the policy. Plaintiff timely reported the loss.

10. Defendant retained an adjusting firm, JS Held, to inspect the loss. Based on the JS Held estimates, Defendant issued payments to the Plaintiff in the total amount of $1,903,144.07. Accordingly, Defendant provided coverage for the loss.

11. Defendant's payment to Plaintiff, however, was far less than the total amount of covered damages sustained by the Plaintiff. For instance, the public adjuster retained by Plaintiff estimated that the total replacement cost value amount to the Plaintiff's property was $5,452,822.65 and the actual cash value amount was $4,324,948.83.

12. The insurance policy Defendant issued contains an appraisal clause. In relevant part, the policy's appraisal clause provides:

> If we and you disagree on the value of the property or the amount of the loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent, disinterested, and impartial appraiser who has no direct or indirect financial interest in the claim. The two appraisers will select an umpire. If they cannot agree, either may request that selection of an umpire be made by a judge of a court having jurisdiction. The appraisers will state separately the value of each item of lost or damaged property as of the date of loss and amount of loss in accordance with the Valuation provisions of the applicable Coverage Form or, if not stated, the

"**actual cash value**" and "**replacement cost**". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

13. To resolve the disagreement on the amount of the loss, Plaintiff demanded appraisal under the insurance contract. To date, Defendant has failed to identify its appraiser or participate in the appraisal process.

14. Relating to the appraisal, Plaintiff seeks a declaration requiring Defendant to name its appraiser and participate in the appraisal process.

15. As Defendant has failed to name its appraiser and participate in the appraisal process despite the clear contractual requirement, an actual, justiciable and present controversy exists between the parties.

**WHEREAS**, Plaintiff respectfully requests entry of a declaratory judgment requiring Defendant to enter the appraisal process and appoint an appraiser.

## COUNT 2—CLAIM FOR DECLARATORY JUDGMENT ( DEFENDANT HAS WAIVED ITS RIGHT TO AN EXAMINATION UNDER OATH OR, ALTERNATIVELY, MUST COMPLETE THE EXAMINATION UNDER OATH WITHIN 14 DAYS AFTER ENTRY OF JUDGMENT)

16. Plaintiff reincorporates paragraphs 1-6 as if fully set forth herein.

17. In exchange for premium dollars, Defendant issued Plaintiff a policy of insurance for Plaintiff's property located at 615-637 N HWY

231 Panama City, Florida 32405. *Policy*, Exhibit A. The coverage period for the policy commenced on September 19, 2018 and ended on September 19, 2019. Plaintiff paid all premiums on the insurance policy.

18. During the policy period, on or about October 10, 2018, Hurricane Michael damaged the Plaintiff's insured property. The loss was covered under the policy. Plaintiff timely reported the loss.

19. Defendant retained an adjusting firm, JS Held, to inspect the loss. Based on the JS Held estimates, Defendant issued payments to the Plaintiff in the total amount of $1,903,144.07. Accordingly, Defendant provided coverage for the loss.

20. Nonetheless, Defendant requested an examination under oath of Plaintiff and certain documents from Plaintiff.

21. The parties initially coordinated the examination under oath to take place on November 21, 2019 in Tallahassee. The examination under oath was rescheduled to provide additional time to supply Defendant with requested documents.

22. On or about January 27, 2020, Plaintiff provided additional documents in response to Defendant's request. These included invoices and payments for actual work performed at the insured

location. Plaintiff, through its counsel's office, informed Defendant that it would wait for potential dates for a rescheduled examination under oath. That same day, counsel for Plaintiff again followed up and asked Defendant to provide dates for a rescheduled examination under oath.

23. In response, Defendant on January 27, 2020 acknowledged through counsel that it received the additional documentation, would download and review the documents and that the carrier would review the requested documents. After reviewing the documents and determining whether any other information was still needed, Defendant indicated that it would reach out regarding the rescheduling of the examination under oath.

24. On February 5, 2020, counsel for Zurich asked whether the Plaintiff was gathering additional invoices or documents that Defendant did not have.

25. On or about February 6, 2020, Plaintiff through counsel sent correspondence informing Defendant that the requested documents were not in the possession of Plaintiff. Plaintiff's correspondence also indicated that if the carrier had questions about these documents, the subcontractor and/or the public adjuster would have no problem

appearing at the examination under oath to resolve any questions by the carrier.

26. On February 17, 2020, Defendant proposed to hold the examination under oath of the Plaintiff on either April 21, 2020; April 28, 2020; or April 29, 2020.

27. On February 24, 2020, Plaintiff through counsel again informed Defendant that it had produced all responsive documents in the Plaintiff's care, custody and control.

28. On March 4, 2020, Plaintiff through counsel again informed Defendant that it had produced all documents in its possession, and informed Defendant that the Defendant's requested documents were not in the possession of the Plaintiff. Plaintiff again offered to have one of the subcontractors or the public adjuster to appear at any future examination under oath to answer questions from the carrier.

29. On April 14, 2020, Plaintiff sent correspondence to the carrier. The correspondence again reiterated that the requested documents were not in the possession or control of the plaintiff, and that all documents in the Plaintiffs possession were provided to the carrier. The letter indicated that should Defendant not respond to coordinate the examination under oath of the client, the subcontractor and/or the

public adjuster, Plaintiff would presume Defendant would not longer wish to proceed with the examination under oath.

30.  Plaintiff has tried several times to coordinate the examination under oath to occur.  Plaintiff has additionally offered to provide testimony from the public adjuster and a subcontractor, but Defendant has failed to coordinate the examination under oath.

**WHEREFORE**, Plaintiff asks the Court for declaratory judgment that Defendant has waived its right to an examination under oath or, alternatively, require Defendant to take the examination under oath of the Plaintiff within 14 days.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 2nd day of June, 2020, the foregoing document was served via email on all counsel of record identified on the attached Service List.

> */s/ Kelly L. Kubiak*
> KELLY L. KUBIAK, ESQUIRE
> Florida Bar No.  108952
> MERLIN LAW GROUP
> 777 S. Harbour Island Boulevard, Suite 950
> Tampa, Florida  33602
> TEL: (813)  229-1000
> FAX: (813) 229-3692
> Attorney for Plaintiff
> kubiakpleadings@merlinlawgroup.com
> kkubiak@merlinlawgroup.com

**SERVICE LIST**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION
Case No.: 5:20-cv-00143-TKW-MJF

Douglas M. McIntosh, Esq.
Dale S. Dobuler, Esq.
Segal McCambridge Singer & Mahoney.
1776 East Sunrise Blvd.
Ft. Lauderdale, FL 33304
ddobuler@mscesq.com
dmcintosh@mscesq.com
Counsel for Defendant